## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ANDREW R. CORCORAN and
SHANNON B. KRESHTOOL,

      Plaintiffs,

      v.

PELEUS INSURANCE COMPANY,
ARGO GROUP US, INC. and
ARGOPRO, LLC,

      Defendants.

Civil Action No. TDC-20-1115

## MEMORANDUM OPINION

In this civil action, Plaintiffs Andrew R. Corcoran and Shannon B. Kreshtool allege a breach of an insurance contract by Defendants Peleus Insurance Company ("Peleus"), Argo Group US, Inc. ("Argo Group"), and ArgoPro, LLC ("ArgoPro") and seek a declaratory judgment and damages. Presently pending before the Court is Defendants' Motion to Dismiss or Transfer. Having reviewed the pleadings, briefs, and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

### I.     The Insurance Policy

BP Fisher Law Group, LLP ("BP Fisher"), a mortgage default foreclosure law firm with day-to-day operations in Prince George's County, Maryland, employed Corcoran as an

Administrative Office Manager beginning in April 2017, and Kreshtool as a Managing Partner beginning in December 2017.

On May 16, 2018, BP Fisher and BP Peterman Law Group, LLC ("BP Peterman"), an affiliated mortgage default foreclosure law firm, (collectively, "the Named Insureds"), obtained a Lawyer's Professional Liability Policy ("the Policy") from ArgoPro, with Peleus as the insurer. The Policy has an aggregate limit of $5,000,000, with a $3,000,000 per claim limit and a $50,000 deductible.  For coverage under the Policy to apply, a claim must be first made against an individual or entity covered by the Policy "during the policy period and reported to the underwriter during the policy period or sixty (60) days thereafter." Compl. ¶ 15, ECF No. 5. A claim is defined as "a written demand received by [a covered person] for money or services, including the service of a lawsuit or other proceedings, alleging a wrongful act," and a wrongful act is defined as "any actual or alleged act, error, omission or breach of duty by [a covered person] in the rendering of or failure to render professional legal services." *Id.* ¶¶ 16-17.  Those covered under the Policy include the Named Insureds and any lawyer who works as "a partner, officer, director, stockholder, shareholder or employee of the named insured, but only while performing professional legal services on behalf of the named insured." *Id.* ¶ 18. The Policy remained in effect until at least December 8, 2018, when Peleus purportedly terminated the Policy due to an alleged lack of payment.

## II.    The Insurance Claim

In the summer of 2018, several of BP Fisher's clients began complaining about the foreclosure firm's handling of third-party funds from foreclosure auctions in Maryland.  Pursuant to its client agreements, BP Fisher was required to send funds from residential foreclosures to its clients within a certain timeframe.

2

One of these clients was Select Portfolio Servicing, Inc. ("SPS"), which had retained BP Fisher to conduct residential foreclosure sales pursuant to an "Attorney Agreement." *Id.* ¶ 20. On September 27, 2018, SPS denied a request from BP Fisher to extend deadlines to transfer third-party funds to SPS. In October and November 2018, SPS sent BP Fisher several other messages, noting that the funds which had not been transferred were now overdue. In December 2018, SPS again demanded that BP Fisher send outstanding funds to the company "immediately." *Id.* ¶ 29. On December 31, 2018, SPS filed suit against BP Fisher in the United States District Court for the District of Maryland alleging various claims, including breach of contract and indemnity. After some discussions with BP Fisher, SPS withdrew its complaint without prejudice. On January 15, 2019, however, after being informed of BP Fisher's intent to file a petition for bankruptcy, SPS refiled its complaint against BP Fisher and several former employees, including Corcoran and Kreshtool, and against Matthew Browndorf, the owner of BP Fisher, ("the SPS Action").

As legal professionals subject to the Policy, Corcoran and Kreshtool have sought to obtain insurance coverage from Defendants for defending against the SPS Action. Defendants, however, have asserted that they are not required to provide coverage to Corcoran and Kreshtool, first, on the theory that they never received adequate notice as required by the Policy, and second, on the theory that SPS's claim, as defined by the Policy, was not asserted during the covered policy period which ended on December 8, 2018.

## III.   Procedural History

On January 15, 2019, the same day that SPS refiled its action, BP Fisher filed a petition for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California ("the Bankruptcy Court"), the district in which its general partner, LF Runoff 2, LLC ("LF Runoff 2") is located. On February 14, 2019,

3

LF Runoff 2 also filed for Chapter 11 bankruptcy protection in the same court. The Bankruptcy Court appointed a trustee to manage both bankruptcies, and both cases were subsequently converted to Chapter 7 bankruptcy proceedings (collectively, "the Bankruptcy Proceeding").

Where Defendants continued to maintain that they did not need to provide coverage under the Policy to Plaintiffs for the SPS Action, on January 31, 2020, Plaintiffs filed the present action in the Circuit Court for Montgomery County, Maryland. On April 30, 2020, Defendants removed the case to this Court.

On June 11, 2020, Peleus filed an adversary proceeding ("the Adversary Proceeding") in the Bankruptcy Court against BP Fisher, LF Runoff 2, BP Peterman, Browndorf, Corcoran, Kreshtool, SPS, and Ditech Financial, LLC to establish through a declaratory judgment that it has no duty to defend or indemnify the identified parties in several lawsuits at issue, including the SPS Action. *See* Adversary Compl. at 7-8, Mot. Dismiss Ex. 25, ECF No. 23-27. Kreshtool filed an Answer in the Adversary Proceeding. *See* Kreshtool Answer, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100 (Bankr. C.D. Cal. Aug. 21, 2020), Dkt. No. 34. Corcoran has filed a Motion to Dismiss or Transfer the Adversary Proceeding to the United States District Court for the District of Maryland, alleging that the Bankruptcy Court lacks personal jurisdiction over him and that the case, at a minimum, should be stayed or transferred and consolidated with the present action. *See* Corcoran Mot. Dismiss Adversary Proceeding at 6-11, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100 (Bankr. C.D. Cal. Aug. 31, 2020), Dkt. No. 38. Browndorf also filed a Motion to Dismiss that adopted, in full, Corcoran's Motion. *See* Browndorf Mot. Dismiss Adversary Proceeding at 2, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100 (Bankr. C.D. Cal. Sept. 9, 2020), Dkt. No. 43. According to the docket of the Bankruptcy Proceeding, no responsive pleadings have yet been filed by BP Fisher, LF Runoff 2, or BP Peterman. *See* Reply Mot. Dismiss Ex. 28, ECF No. 35-

4

3. On April 15, 2021, in a Joint Status Report filed in the Adversary Proceeding, SPS requested that the Adversary Proceeding be transferred to the District of Maryland. Joint Status Report at 7, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100 (Bankr. C.D. Cal. Apr. 15, 2021), Dkt. No. 67.

## DISCUSSION

In their Motion, Defendants seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join required parties under Rule 19. In particular, Defendants argue that Named Insurers BP Fisher and BP Peterman are required parties. Defendants also move, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California.

In resolving the Motion, the Court will take judicial notice of and consider the record and documents in the Bankruptcy Proceeding and the Adversary Proceeding. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (taking judicial notice of court records where the parties did not dispute the authenticity of the documents).

## I.    Motion to Dismiss

In their Motion, Defendants argue that BP Fisher and BP Peterman are required parties to this action, that joinder of BP Fisher is not feasible where that entity is under an automatic bankruptcy stay and joinder of BP Peterman is not feasible because this Court lacks personal jurisdiction over that entity, and that, as a result, dismissal is warranted under Rule 12(b)(7).

### A.    Legal Standards

Under Rule 12(b)(7), a party may file a motion to dismiss "for failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). When considering such a motion, the court engages in a two-step inquiry. First, it must determine whether, under Rule 19, the absent party is "necessary to a

5

proceeding because of its relationship to the matter under consideration." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Second, if the party is necessary but joinder is not feasible due to limitations on service of process, subject matter jurisdiction, or venue, the court must determine "whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Id.*; *see* Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment. "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois*, 186 F.3d at 441.

An absent party is a required party under Rule 19 and must be joined if:

(A)    in that person's absence, the court cannot accord complete relief among existing parties; or

(B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

**B.    Rule 19 Joinder**

As to the first basis under which a party may be required to be joined in a pending case, Fed. R. Civ. P. 19(a)(1)(A), the Court finds that it would be able to accord complete relief to Plaintiffs without the joinder of BP Fisher or BP Peterman. The terms of the Policy, which appear to provide coverage to BP Fisher, BP Peterman, and "any lawyer who is . . . [an] employee of the named insured . . . while performing professional legal services on behalf of the named insured," govern whether Plaintiffs are able to obtain coverage for the SPS Action. Policy at 6, Compl. Ex. A, ECF No. 17. There is no dispute that Peleus is the insurer under the Policy. Therefore, regardless of whether the Named Insureds are parties to this case, if the Court finds that under the

language of the Policy Corcoran and Kreshtool are entitled to coverage, it would be able to order complete relief to be satisfied by Defendants even in the absence of all insured entities and individuals. *See Fed. Ins. Co. v. Singing River Health Sys.*, 850 F.3d 187, 201 (5th Cir. 2017) (holding that the district court could afford complete relief in a dispute between the insurance company and health systems insured under an insurance policy without the joinder of all entities insured under the policy); *see also Starstone Nat'l Ins. Co. v. Polynesian Inn, LLC*, No. 618CV1048ORL31TBS, 2018 WL 9669764, at *2 (M.D. Fla. Dec. 17, 2018) (holding that the three additional named insureds would not qualify as required parties under Rule 19 because their absence was no barrier to the court affording complete relief among the existing parties where the main issue in the case was interpreting the terms of the governing insurance policy). Accordingly, BP Fisher and BP Peterman do not constitute required parties under Rule 19(a)(1)(A).

The second way by which a party may be required to be joined is set forth in Rule 19(a)(1)(B), which has two subparts, either of which could provide a basis to require joinder. *See* Fed. R. Civ. P. 19(a)(1)(B); *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 678 (E.D. Va. 2014). However, pursuant to the plain language of Rule 19(a)(1)(B), a prerequisite to finding required joinder under this provision is that the alleged required party "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B); *see Roberts v. City of Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020) (holding that required joinder is "contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action"); *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 483 (7th Cir. 2001) (noting that "under Rule 19(a) it is the absent party that typically must claim such an interest"). Courts have interpreted this "requirement narrowly, usually requiring some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter." *Marina One*, 29 F. Supp. 3d. at 678.

Here, neither BP Fisher nor BP Peterman have affirmatively expressed any interest in the present case, and, although they are named parties in the Adversary Proceeding, which deals with substantially similar issues relating to the Policy, neither has filed any responsive pleading claiming an interest in the Adversary Proceeding. Moreover, Browndorf, but not BP Fisher or BP Peterman, has filed a motion in the Adversary Proceeding seeking to transfer or consolidate that action into the present case. According to a declaration filed in the Bankruptcy Proceeding, Browndorf is the administrative general partner of BP Fisher and the Chief Executive Officer of LF Runoff 2, an entity which is the managing member of BP Peterman and the general partner of BP Fisher. Thus, through Browndorf, BP Fisher and BP Peterman have actual notice of the present case, but notably neither has claimed an interest in it. Where BP Fisher and BP Peterman are aware of the present case but have never claimed an interest in its outcome, the Court concludes that neither party is required under Rule 19 and therefore need not be joined. *See United States v. Bowen*, 172 F.3d 682, 688-89 (9th Cir. 1999) (holding that where a party was aware of an action but never claimed an interest in it, the district court did not err in finding that joinder was not required); *see also Starstone Nat'l Ins. Co.*, 2018 WL 9669764, at *2 (finding that additional named insurers likely did not qualify as required parties to a dispute where "so far as the record discloses, none of the three [named insureds] have claimed any interest in either of the policies").

Because neither BP Fisher nor BP Peterman qualify as required parties under Rule 19, the Court will deny the Motion as to the argument that dismissal is warranted under Rule 12(b)(7) for failure to join a party.

## II.    Motion to Transfer

In the alternative, Defendants request that this Court transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). "For the

8

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought[.]" 28 U.S.C. § 1404(a) (2018); *see Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984). To prevail on a motion under § 1404(a), the moving party "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty & Const. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002). Courts consider four case-specific factors: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The movant bears the burden to show that "the balance of convenience and the interest of justice [is] strongly in favor of the moving party." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (quoting *Lanier Bus. Prod. v. Graymar Co.*, 355 F. Supp. 524, 527 (D. Md. 1973)). The decision to transfer is within the discretion of the court. *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

As to the first factor, a plaintiff's choice of venue is given substantial weight. *See Trs. of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444. Here, the Plaintiffs chose Maryland as their venue by filing their action in Maryland state court before the case was removed to federal court. Plaintiffs reside in Maryland, were employed in Maryland by BP Fisher when they engaged in the activities for which they seek insurance coverage, and allege that all of the foreclosure activities underlying the claims in this case occurred in Maryland. Thus, Plaintiffs' choice of venue should be afforded maximum weight. *See Stronghold Sec. LLC v. Sectek, Inc.*, 582 F. Supp. 2d 726, 729 (D. Md. 2008) (noting that substantial weight was given to the plaintiff's choice of venue because the plaintiff's principal place of business was in Maryland, the relevant

contract was executed in Maryland for the purpose of performing work in Maryland, and the work underlying the issues in the case was performed in Maryland).

The second factor, witness convenience, is "perhaps the most important factor" in determining whether a transfer of venue should be granted. *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (quoting *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000)). This factor protects witnesses from unnecessary travel, expenditures of time, and expenses. *See id.* at 474. On this factor, "mere assertions of inconvenience or hardship are inadequate"; rather, movants must detail the specific hardships that witnesses will suffer by proceeding in the plaintiff's chosen venue. *Dow*, 232 F. Supp. 2d at 499. Defendants have not done so. The primary non-party witnesses appear to be Browndorf and relevant SPS personnel. Browndorf, by filing a Motion to Dismiss or in the Alternative Stay or Transfer in the Adversary Proceeding, in which he adopted the arguments made in Corcoran's Motion to Dismiss or Transfer in the same matter, has effectively expressed a preference to have this case and any testimony occur in Maryland, despite his residency in California. *See* Browndorf Mot. Dismiss Adversary Proceeding at 2, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100, (Bankr. C.D. Cal Sept. 9, 2020), Dkt. No. 43; Corcoran Mot. Dismiss Adversary Proceeding at 8-11, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100 (Bankr. C.D. Cal Aug. 31, 2020), Dkt. No. 38. Thus, it is fair to conclude that venue in Maryland does not create inconvenience to arranging for his testimony or access to his records. Similarly, SPS, through a status report in that case, also expressed a preference for the Adversary Proceeding to be transferred to this Court and heard in Maryland. *See* Joint Status Report at 7, *In re B.P. Fisher Law Grp.*, No. 20-ap-01100 (Bankr. C.D. Cal Apr. 15, 2021), Dkt. No. 67. Thus, as to the main non-party witnesses who would need to participate in this case, the Court finds that they have both expressed a preference for the relevant issues to be decided in

10

Maryland, thus mitigating concerns of inconvenience to those witnesses. This factor thus weighs against transfer.

As to convenience of the parties, when the venue is the plaintiff's home state, convenience to other parties rarely justifies transfer as that would only serve to shift the balance of inconvenience to the other party. *Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259-60 (E.D. Va. 1988). Here, although Corcoran works remotely for an entity located in California, both Plaintiffs work and reside in Maryland. As listed in the Policy, Peleus has a home and administrative office address in Virginia, and ArgoPro US, the underwriter, is located in New Jersey. Where these states are next to or near Maryland, and Defendants have not presented any evidence that it is more convenient for Peleus and the other Defendants to litigate this case in California, on the other side of the country, the Court finds that convenience of the parties does not weigh in favor of transfer.

On the issue of the interest of justice, Defendants argue that transfer to the Central District of California would be appropriate for various reasons, including that all parties with an interest in the Policy can be made parties to the litigation in that forum, Defendants are subject to personal jurisdiction in California because the Policy was issued there, Plaintiffs have individually availed themselves of personal jurisdiction in that forum, the Named Insurers have their principal places of business there, and the case may then be consolidated in that forum with the Adversary Proceeding.

Corcoran, however, has objected to personal jurisdiction in the Adversary Proceeding, and the issue has yet to be resolved. Thus, it is not immediately clear that both Plaintiffs can be required to litigate this matter in California, especially where Corcoran's alleged connection to California is based on his remote employment with an entity in that state, and that employment began after

11

the events at issue in this case had already taken place. While the Named Insureds have California addresses listed on the Policy, Peleus and ArgoPro are based elsewhere.

Moreover, the first-to-file rule, under which there is a strong presumption that similar actions should be decided by the court in which the first case was brought, is relevant to the interest-of-justice factor and further supports a determination to decline to transfer this case because Plaintiffs filed this action on January 31, 2020, nearly five months before Peleus filed the Adversary Proceeding in California on June 11, 2020. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594-95 (4th Cir. 2004) (noting that "the first suit should have priority, absent the showing of balance of convenience in favor of the second action," and holding that the district court did not abuse its discretion in declining to defer to a second-filed proceeding); *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 900, 902 (D. Md. 2008) (applying the first-to-file rule in declining to transfer a first-filed Maryland case to California).

Finally, as to other factors referenced by the parties, *see Stronghold Sec.*, 582 F. Supp. at 729, where the actions for which Plaintiffs seek insurance occurred while they were working in Maryland on matters relating to properties in Maryland, there is a local interest in having this matter resolved in Maryland. Although the Court presently lacks sufficient information to determine which state's substantive law would apply, Defendants acknowledge that such a determination does not materially impact which forum should be selected. Reply Mot. Dismiss at 19, ECF No. 35.

Upon consideration of all of the factors, the Court finds that Defendants have not met their burden to establish that "the balance of convenience and the interest of justice [is] strongly in favor of" transfer. *Dow*, 232 F. Supp. 2d at 499. The Court will therefore deny the motion to transfer. *See Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (holding that "unless the balance is

strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed") (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Transfer will be DENIED. A separate Order shall issue.

Date:  August 6, 2021

THEODORE D. CHUANG
United States District Judge

13